# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

CINCINNATI INSURANCE COMPANY                                            PLAINTIFF

v.                          Case No. 4:18-cv-00492-KGB

ANDREA DIEVERNICH, *et al.*,                                            DEFENDANTS

## ORDER

Before the Court are plaintiff Cincinnati Insurance Company's ("Cincinnati") motions to deposit interpleader funds, motion for default judgment, motions to extend time for service, and motion for retroactive leave to file reply (Dkt. Nos. 6, 12, 47, 53, 60, 75). Also pending before the Court are motions to dismiss filed by various defendants (Dkt. Nos. 22, 25, 29, 49). Finally, the Court has before it a motion to strike filed by Mark Allen, Sr., Montreal Allen, Andrew Bagley, Collin Bagley, Cheryl Dixon, Chiniya Ellis, Chester Harrell, Katrine Harrell, Demontae Oliver, Philemon Oliver, Gian Roberts, Trina Roberts, Kylan Terry, Breuna Womack, Earnest Womack, D'Andreya Devay Young, and D'Andreya Young (collectively, the "Allen defendants"), as well as by Kobe Simpson, Keisha Simpson, Earnest Simpson III (collectively, the "Simpson defendants") (Dkt. No. 56).

For the reasons discussed below, the Court grants the following motions filed by Cincinnati: the second motions to deposit interpleader funds, the motions to extend time for service, and the motion for retroactive leave to file reply (Dkt. Nos. 12, 47, 53, 60, 75). The Court also grants defendants' requests for a change of venue. Further, the Court refers Cincinnati's motion for default judgment to the Clerk of Court to determine if entry of default is appropriate under Rule 55(a) of the Federal Rules of Civil Procedures (Dkt. No. 47).

The Court denies as moot the first motion to deposit interpleader funds (Dkt. No. 6). The Court also denies the motions to dismiss filed by various defendants (Dkt. Nos. 22, 25, 29, 49). Finally, the Court also denies the motion to strike filed by the Allen defendants (Dkt. No. 56).

## I. Factual Background

The following facts are taken from Cincinnati's amended complaint (Dkt. No. 2). According to its amended complaint, Cincinnati brings this interpleader action as the result of a November 10, 2017, automobile accident that involved three Helena-West Helena School District buses (Dkt. No. 2, ¶ 119). The defendants include drivers and passengers on the school bus, adjacent vehicles, and entities alleged to have provided medical treatment because of the accident (*Id.*). Cincinnati alleges that all passengers of the buses may have claims for injuries resulting from the accident (*Id.*, ¶ 120).

Cincinnati alleges that it issued a policy of insurance ("Policy") to the Helena-West Helena School District with a $100,000.00 liability limits for a policy period of July 1, 2017, through July 1, 2018 (*Id.*, ¶ 122). Cincinnati further alleges that the potential damages claimed and incurred by defendants "will likely exceed available coverage." (*Id.*, ¶ 123). Because Cincinnati concedes that it owes defendants $100,000.00 in coverage but also concedes that it is unable to allocate those available funds among defendants, Cincinnati seeks to deposit $100,000.00 into the registry of the Court to "avoid being vexed and harassed by conflicting and multiple claims." (*Id.*, ¶¶ 124, 129). Cincinnati also seeks an award of attorneys' fees and costs incurred for this interpleader action (*Id.*, ¶ 130).

## II. Procedural Background

Given the number of parties and pending motions in this case, the Court will briefly recount the procedural history of this action.

Cincinnati filed its original complaint in interpleader on July 27, 2018, and subsequently filed an amended complaint in interpleader on August 10, 2018 (Dkt. Nos. 1, 2). The amended complaint names 113 individuals and entities as defendants, not counting the guardians of the minor defendants (Dkt. No. 2, ¶¶ 2-114). Cincinnati filed two motions to deposit funds (Dkt. Nos. 6, 12). Separate defendants Kylaun Anderson, Sandra Anderson, Marvie Askew-Evans, Donna Block, Keyon Burrell, Bakarius Collier, Maxine Ellison, Tasheta Evans, Carl Ford, Jr, Cynthia Ford, Kylar Gamble, Jaylon Gates, Torri Gates, Bobbie Randle, and Jordan Walker (collectively the "Anderson defendants") responded to the motion to deposit interpleader funds (Dkt. No. 14). Cincinnati filed a reply in support of their motions to deposit interpleader funds (Dkt. No. 26). Later, separate defendant Phillips Hospital Corporation d/b/a Helena Regional Medical Center ("Helena Regional") also filed a response to Cincinnati's motions to deposit interpleader funds (Dkt. No. 42).

Separate defendants Kobe Simpson, Keisha Simpson, and Earnest Simpson III filed an answer, objection, and motion to dismiss in response to plaintiff's first amended complaint in interpleader (Dkt. No. 22). In their filing, the Simpson defendants argue that this Court lacks subject matter jurisdiction because there is no diversity of citizenship between the proper parties to the action, that the Western Division of the Eastern District of Arkansas is the incorrect venue, and that Cincinnati does not "propose to pay the total funds available to the various Defendants from Plaintiff's policies of insurance," claiming the Simpson defendants believe Cincinnati's exposure to be at least $300,000.00 (Dkt. No. 22, at 5-6). The Allen defendants also filed an answer, objection, and motion to dismiss plaintiff's first amended complaint in interpleader, raising similar arguments (Dkt. No. 25). Furthermore, Tangela King, Taylin King, Kyron Smith, and Gloria Spencer (collectively, the "King defendants") filed a motion to dismiss, objection, and

3

answer raising similar arguments (Dkt. No. 29). Finally, Debbie Oliver and John Oliver filed an answer with an attached brief that seeks dismissal of the amended complaint on the same grounds raised by the other defendants (Dkt. No. 49). Cincinnati responded in opposition to each of these filings (Dkt. Nos. 31, 33, 35, 51).

On October 12, 2018, Cincinnati filed a motion for default judgment (Dkt. No. 47). In that motion, Cincinnati identified 39 defendants who Cincinnati contends were timely served and did not timely answer (*Id.*, at 1-8). Accordingly, Cincinnati in its motion for default judgment seeks an order from this Court discharging it from any further liability to any of the defaulting defendants and a permanent injunction prohibiting the defaulting defendants from instituting any proceedings against Cincinnati regarding the accident at issue (Dkt. No. 48, at 2).

On October 24, 2018, Cincinnati also filed a motion to extend time for service (Dkt. No. 53). In that motion, Cincinnati asserted that 28 defendants remained to be served and that there was good cause for the Court to extend the time for service until January 25, 2019 (Dkt. No. 53). The Allen defendants responded in opposition to the motion to extend the time for service, and Cincinnati replied (Dkt. Nos. 54, 55). The Allen defendants then filed a motion to strike Cincinnati's reply, to which Cincinnati responded (Dkt. Nos. 56, 58). Cincinnati then filed a motion for retroactive leave to file reply, and the Allen defendants responded in opposition to that motion (Dkt. Nos. 60, 65). Finally, on January 1, 2019, Cincinnati filed a second motion to extend time for service, this time requesting an extension until March 11, 2019 (Dkt. No. 75). The Allen and Simpson defendants responded in opposition to the second motion to extend time for service (Dkt. No. 79).

## III. Discussion

First, the Court concludes that it has subject matter jurisdiction over this action. Second, the Court declines to rule on the terms of the Policy at this stage of the litigation. Third, pursuant to Federal Rule of Civil Procedure 22, the Court grants Cincinnati permission to deposit $100,000.00 into the registry of the Court. Fourth, the Court refers Cincinnati's motion for default judgment to the Clerk to determine whether entry of default is appropriate under Rule 55(a) of the Federal Rules of Civil Procedure. Fifth, the Court grants defendants' request to change venue. Sixth, and finally, the Court grants Cincinnati's motion for retroactive leave to file reply, denies the Allen defendants' motion to strike, and grants Cincinnati's motions to extend time to obtain service on defendants.

### A. Subject Matter Jurisdiction

Several defendants have challenged whether the Court has subject-matter jurisdiction to decide this action. Those defendants argue that "[m]inimal diversity was created by the non-diverse Plaintiff by adding improper parties, alleged creditors of the various individual claimants." (Dkt. Nos. 22, ¶ 7; 25, ¶ 7; 29, ¶ 8; 49-1, ¶ 1). Additionally, Mr. and Ms. Oliver filed a brief in which they cited 28 U.S.C. § 1332(c)(1), presumably to argue that Cincinnati is a citizen of Arkansas, and therefore non-diverse (Dkt. No. 49-1, at 1).

Defendants' arguments raise two points: (1) that minimal diversity, which is required for statutory interpleader under 28 U.S.C. § 1335, does not exist; and (2) that complete diversity, which is required for diversity jurisdiction under 28 U.S.C. § 1332, does not exist. The first argument is moot, as Cincinnati has conceded that it is not proceeding under statutory interpleader. Instead, Cincinnati states that it only seeks interpleader under Rule 22 of the Federal Rules of Civil Procedure. Jurisdiction for Rule 22 interpleader actions "must be based upon the general

5

jurisdiction statutes applicable to civil actions in the federal courts." *St. Louis Union Trust Co. v. Stone*, 570 F.2d 833, 835 (8th Cir. 1978); *see Arnold v. KJD Real Estate, LLC*, 752 F.3d 700, 704 (7th Cir. 2014) (citing Alan Wright, et al., *Fed. Prac. & Proc. Civ.* § 1710 (3d ed.)).

Cincinnati does not assert federal question jurisdiction; thus, the Court looks to whether it has diversity jurisdiction over this matter. A complaint may be filed in federal court if there is complete diversity between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a). "Subject matter jurisdiction asserted under 28 U.S.C. § 1332 may be maintained only where there is complete diversity, that is where no defendant holds citizenship in the same state where any plaintiff holds citizenship*.*" *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 445 (8th Cir. 2010) (internal quotation marks omitted). When, as here, a defendant challenges the factual assertions that underpin the jurisdictional claim, a court may consider matters outside the pleadings. *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015). The plaintiff must establish jurisdiction "by competent proof and by a preponderance of the evidence." *Eckerberg v. Inter-State Studio & Publ'g Co.*, 860 F.3d 1079, 1084 (8th Cir. 2017).

First, the Court finds that Cincinnati has sufficiently alleged the required amount-in-controversy of $75,000.00. "[A] complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *Scottsdale Ins. Co. v. Universal Crop Protection Alliance, LLC*, 620 F.3d 926, 931 (8th Cir. 2010) (internal quotation marks omitted). In its amended complaint, Cincinnati "concedes that it owes these Defendants its single limit for liability motorist coverage in the amount of $100,000.00 . . . ." (Dkt. No. 2, ¶ 124). Based

6

upon this allegation, the Court concludes that Cincinnati has sufficiently alleged the amount-in-controversy required for diversity jurisdiction under 28 U.S.C. § 1332.

Second, the Court concludes that Cincinnati has sufficiently demonstrated complete diversity of citizenship. In its amended complaint, Cincinnati alleges that it is "a foreign corporation and insurance company, organized under the laws of the state of Ohio and with its principal place of business in Ohio." (Dkt. No. 2, ¶ 1). Cincinnati alleges that it is licensed to do business in Arkansas (*Id.*, ¶ 2). Except for Saline County Medical Center, Cincinnati alleges that all the defendants "are believed to be residents of Phillips County or have their principal place of business in Phillips County, Arkansas." (*Id.*, ¶ 104). Cincinnati does not allege the residency of Saline County Medical Center, but it does allege that Saline County Medical Center's registered agent for service of process is in Little Rock, Arkansas (*Id.*, ¶ 113). No defendant alleges that it is a citizen of Ohio. Accordingly, the question before the Court is whether Cincinnati is a citizen of Arkansas, not a citizen of Ohio as Cincinnati alleges.

The diversity jurisdiction statute addresses the citizenship of corporations:

> [A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business, *except that in any direct action against the insurer of a policy or contract of liability insurance*, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of—
>
>     (A)    every State and foreign state of which the insured is a citizen;
>
>     (B)    every state and foreign state by which the insurer has been incorporated; and
>
>     (C)    the State or foreign state where the insurer has its principal place of business . . . .

28 U.S.C. § 1332(c)(1). The Supreme Court ruled that this provision does not apply to actions brought by insurers. *Northbrook Nat. Ins. Co. v. Brewer*, 493 U.S. 6, 7 (1989). There the lower

court ruled that 28 U.S.C. § 1332(c)(1) barred a diversity action brought by an Illinois insurer of a Texas corporation against a Texas employee. 493 U.S. at 7. The Supreme Court overruled this decision, holding that "the direct action proviso is not applicable in this case because [the insurer's] suit was an action by, not against, an insurer." *Id*. at 9. Accordingly, Cincinnati is a corporation with its principal place of business in Ohio. Therefore, the Court concludes that Cincinnati is a citizen of Ohio. No defendant asserts that it is a citizen of Ohio. Therefore, taking as true the allegations in the complaint, the Court concludes that complete diversity exists here.

Since the amended complaint sufficiently alleges an amount-in-controversy in excess of $75,000.00 and complete diversity of citizenship, the Court concludes that it has subject matter jurisdiction to hear this matter under 28 U.S.C. § 1332.

## B. Policy Coverage

In response to Cincinnati's motions to interplead funds, several defendants assert that Cincinnati's coverage extends to $300,000.00, not $100,000.00, as Cincinnati contends (Dkt. Nos. 14, 19, 22, 25, 29, 46, 49, 69, 72, 83). Defendants argue that because Arkansas' minimum coverage statute—Arkansas Code Annotated § 27-22-104—provides that liability insurance policies must provide "[not] less than fifty thousand dollars . . . for bodily injury or death of two or more persons in any one accident," the actual minimum coverage available in this case is at least $150,000.00 (*see* Dkt. No. 15, at 6). Furthermore, defendants argue that the Policy provides for $100,000.00 in coverage per vehicle, resulting in $300,000.00 in coverage under the Policy for the accident at issue here (*Id*.). Cincinnati retorts that Arkansas Code Annotated § 27-22-104 does not apply to the present case because that statute does not apply to state-owned vehicles (Dkt. No. 26, ¶ 3). Furthermore, Cincinnati asserts that the Policy "unambiguously states that $100,000 is the coverage amount for the subject accident." (*Id*., ¶ 2).

8

The Court declines to decide the coverage limits of the Policy at this time. Unlike statutory interpleader, a stakeholder proceeding under Rule 22 interpleader is not necessarily required to deposit the highest amount claimed by defendants. *See Acuity v. Rex, LLC*, 296 F. Supp. 3d 1105, 1108 (E.D. Mo. 2017) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ambassador Grp., Inc.*, 691 F. Supp. 618, 621 (E.D.N.Y. 1988)), *appeal docketed*, *Acuity, A Mutual Ins. Co. v. Rex, LLC, et al.*, 18-1735 (8th Cir. 2019); *A & E Television Networks, LLC v. Pivot Point Entertainment, LLC*, 771 F. Supp. 2d 296, 300 (S.D.N.Y. 2011) (noting that "under rule interpleader a stakeholder may deposit the amount it believes to be in dispute"). Under Rule 22, Cincinnati is under no obligation to interplead the highest amount claimed by the claimants; rather, Cincinnati may interplead the amount it believes to be in dispute. Accordingly, the Court need not interpret the Policy to rule on the pending motions to interplead funds. Because the Court declines to decide the coverage limits of the Policy at this time, but because defendants raise the issue, the Court will not dismiss Cincinnati from this action.

### C.     Motion To Deposit Funds

Also before the Court are Cincinnati's motions to deposit funds (Dkt. Nos. 6, 12). For the reasons discussed below, the Court grants Cincinnati's second motion to deposit funds (Dkt. No. 12). The Court denies as moot Cincinnati's first motion to deposit funds (Dkt. No. 6).

The Court concludes that Cincinnati may deposit the $100,000.00 into the registry of the Court. As Cincinnati has clarified that it is proceeding under Rule 22 of the Federal Rules of Civil Procedure, the Court will limit its analysis to that Rule.

Rule 22 states that persons "with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead . . . ." Fed. R. Civ. P. 22(a)(1). "Rule interpleader 'does not provide an independent basis for jurisdiction' but can 'be premised

on the diversity statute.'" *Federated Mut. Ins. Co. v. Moody Station and Grocery*, 821 F.3d 973, 976 (8th Cir. 2016) (quoting *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 338 F.3d 119, 124 (2d Cir. 2003)). "Rule interpleader 'requires that the plaintiff . . . be of diverse citizenship to all defendants, and that the amount in controversy be greater than $75,000.'" *Federated Mut. Ins. Co.*, 821 F.3d at 976-977 (quoting *Correspondent Servs. Corp.*, 338 F.3d at 124). Cincinnati's amended complaint alleges facts sufficient to show diversity jurisdiction. Cincinnati is a foreign corporation organized under the laws of the state of Ohio that maintains its principal place of business in Ohio (Dkt. No. 2, at ¶ 1). Cincinnati alleges that all of the defendants are citizens of the state of Arkansas (*Id.*, ¶¶ 2-114). Cincinnati has alleged an amount-in-controversy in the sum of $100,000.00 (*Id.*, ¶ 124). Based upon the allegations at this stage of the litigation, the Court concludes that diversity jurisdiction is proper in this action.

The Court recognizes that the parties dispute the total sum owed by Cincinnati to defendants, although to date no claim or counterclaim for declaratory judgment has been filed to bring this issue before the Court. *See*, *e.g.*, *Nationwide Mut. Ins. Co v. Eckman*, 555 F. Supp. 775, 778 (D. Del. 1983) (addressing disputed amount owed by automobile liability insurer in interpleader through defendant's counterclaim); *State Farm Mut. Auto. Ins. Co. v. Drewry*, 191 F. Supp. 852 (W.D. Va. 1961), *aff'd* 316 F.2d 716 (4th Cir. 1963) (addressing an action of interpleader and for a declaratory judgment respecting amount of coverage due under policy). If this were a statutory interpleader filed pursuant to 28 U.S.C. § 1335, for this Court to have subject matter jurisdiction, Cincinnati would have to deposit with the Court the highest amount claimed by defendants. *Acuity*, 296 F. Supp. 3d at 1108; *Nationwide Mut. Ins. Co v. Eckman*, 555 F. Supp. at 778 (citing *Prudential Ins. Co v. Bennett*, 299 F. Supp. 451, 452 (S.D. Ga. 1969)). However, Cincinnati admits that it brings this action pursuant to 28 U.S.C. § 1332 and Rule 22 of the Federal

Rules of Civil Procedure. Rule 22 does not require the plaintiff to deposit the highest amount claimed for this Court to retain jurisdiction; instead, the plaintiff stakeholder may deposit the amount it believes to be in dispute in Rule 22 interpleader. *Acuity*, 296 F. Supp. 3d at 1108 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.* 691 F. Supp. at 621); *Eckman*, 555 F. Supp. at 778 (citing *United Benefit Life Ins. Co. v. Leech*, 326 F. Supp. 598, 600 (E.D. Pa. 1971)).

Further, Rule 22 interpleader does not require that any funds be deposited into the registry of the Court. *See Bauer v. Uniroyal Tire Co.*, 630 F.2d 1287, 1291 (8th Cir. 1980) ("[N]o deposit was required for jurisdiction since the interpleader action was brought pursuant to Rule 22 . . . ."). Rather, in Rule 22 interpleader actions, district courts have the discretion to require a deposit. *Id.*, at 1291, n.4 (citations omitted). Accordingly, Rule 67 of the Federal Rules of Civil Procedure governs Cincinnati's request to deposit funds into the registry of the Court. Rule 67 provides in pertinent part:

> **(a) Depositing Property.** If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party—on notice to every other party and by leave of court—may deposit with the court all or part of the money or thing, whether or not that party claims any of it. The depositing party must deliver to the clerk a copy of the order permitting deposit.

Fed. R. Civ. P. 67(a).

For good cause shown, the Court grants Cincinnati's motion to deposit funds (Dkt. No. 12). The Court denies as moot Cincinnati's prior motion to deposit funds (Dkt. No. 6). While the Court allows Cincinnati to deposit $100,000.00 into the registry of the Court based on Rule 22 interpleader, at this time, the Court expresses no opinion regarding the extent of Cincinnati's liability to defendants and declines to dismiss Cincinnati from the action at this time. *Midland Nat'l Life Ins. Co. v. Rivas*, 318 F.R.D. 303, 308 n.3 (E.D. Pa. 2016) (determining "that although discharge of the plaintiff is usually warranted where an impleader is proper and the plaintiff acted

in good faith, it is improper to dismiss an interested plaintiff that disputes the amount of liability."); *Phoenix Ins. Co. v. Small*, 307 F.R.D. 426, 434-35 (E.D. Pa. 2015) (same); *Eckman*, 555 F. Supp. at 778 (determining that "[t]he dismissal of American Casualty, however, was not proper. At this juncture, American Casualty disputes its obligation to indemnify its insured for an additional $200,000 as is demanded in the counterclaim. Because American Casualty disputes its obligation to pay this additional sum, it retains an interest in this interpleader suit.").

### D. Motion For Default Judgment

Cincinnati moves for default judgment against the following 39 separate defendants (the "defaulting defendants"):

> Andrea Dievernich, Sammy Arnett III, Amod Bailey, Terrace Bailey, Rance Bolden, Adrienne Boone, Timothy Bryant, Jerry Burks, Armonie Calhoun, Terrance Calhoun, Clayton Dyer, Brian Eaton, Jameshia Edmond, Eddie Evans, Yarvarious Frazier, Caldreekious Harrell, Markese Harris, Hickory Hill Pharmacy, Eboni Holloway, Cleo Hunter, William Jackson, Brian Jackson, Kadarrian Jones, Jayla Lemon, Silas Marshall, Andrew Mattson, Sha'kiera McGaughy, Jamarius McGhee, Daitrion Owens, Sariah Robinson, Joseph Robinson, Justin Rogers, Demarcus Sheard, Tykiah Speed, Thomas Stevenson, Malek Trotter, Calvin Willis, and Aaron Wright.

(Dkt. No. 47). Attached to his motion for default judgment are the proofs of service for each of the defaulting defendants (Dkt. Nos. 47-1—47-39). Cincinnati asserts that the defaulting defendants filed no answer or other pleading within 21 days of such service (Dkt. No. 47). Cincinnati also asserts that the defaulting defendants have forfeited any claim of entitlement to the amount interpleaded with the Court (*Id.*). No party has responded to Cincinnati's motion for default judgment.

For the reasons discussed below, the Court construes Cincinnati's motion as one for entry of default and refers it to the Clerk to determine if entry of default is appropriate (*Id.*). Rule 55 of the Federal Rules of Civil Procedure contemplates a two-step process for the entry of default

judgments. *Fraserside IP L.L.C. v. Youngtek Solutions Ltd.*, 796 F. Supp. 2d 946, 951 (N.D. Iowa 2011) (citation and internal quotation marks omitted). First, pursuant to Rule 55(a), the party seeking a default judgment must have the clerk of court enter the default by submitting the required proof that the opposing party has failed to plead or otherwise defend. *Id.* Second, pursuant to Rule 55(b), the moving party may seek entry of judgment on the default under either subdivision (b)(1) or (b)(2) of the Rule. *Id.* Entry of default under Rule 55(a) must precede a grant of default judgment under Rule 55(b). *Id.*

A "default" occurs when a defendant fails to answer or respond to a complaint, and an "entry of default" is what the clerk of the court enters when it is established that a defendant is in default. *Denton v. Conveyor Tech. & Components, Inc.*, 4:12-CV-191-KGB, 2013 WL 2422679 (E.D. Ark. June 1, 2013); *Roberts v. Kevmar Capital Corp.*, No. 4:11cv00681 BRW, 2012 WL 1193133 (E.D. Ark. April 10, 2012). The entry of default is a procedural step in obtaining a default judgment; it is not determinative of any rights. *Id.* Pursuant to Federal Rule of Civil Procedure 8(b)(6), "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." The entry of a default judgment is committed to the sound discretion of the district court. *F.T.C. v. Packers Brand Meats, Inc.*, 562 F.2d 9, 10 (8th Cir. 1977).

Here, the Court construes Cincinnati's motion as one for entry of default by the Clerk of Court and for entry of default by this Court. Accordingly, the Court hereby refers the motion to the Clerk of Court for consideration. To consider a motion for default under Rule 55(a), the Clerk requires an affidavit or affirmation setting forth proof of service, including the date thereof; a statement that no responsive pleading has been received within the time limit set by the Federal

Rules of Civil Procedure or as fixed by the Court; and a statement that the defendant against whom default is sought is not in military service, as required by 50 App. U.S.C. § 521.

If a Clerk's default is entered, the Court directs that the motion not be termed. If a Clerk's default is entered, the Court will consider the motion for default judgment pursuant to Rule 55(b) of the Federal Rules of Civil Procedure.

### E. Motion To Change Venue

Several defendants argue that venue properly lies in the Eastern Division of the Eastern District of Arkansas (Dkt. Nos. 19, 22, 25, 29, 49). These defendants argue that venue is proper in the Eastern Division because 183 of the parties reside in Phillips County, Arkansas, which is in the Eastern Division (*see* Dkt. No. 22, ¶ 8). Further, they assert that only one "proper party" to this action—Ms. Dievernich—resides outside of the Eastern Division (*Id.*). While Cincinnati filed this case in the Western Division of the Eastern District of Arkansas, from the facts alleged and the defendants named, it appears that venue properly lies in the Eastern Division of the Eastern District of Arkansas. *See* 28 U.S.C. §1391(b).

A district court considering a change of venue must evaluate both the convenience of the parties and various public-interest considerations. Section 1404(a) provides, in relevant part, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Eighth Circuit employs a three-factor balancing test which considers: "(1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice." *Terra Int'l. Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). Given that the majority of the parties are located in Phillips County, Arkansas, the Court finds that the interests of justice would best be served by transferring this case to the Eastern Division of the Eastern District of

Arkansas. The Clerk of the Court is directed to transfer immediately this entire case to the Eastern Division of the Eastern District of Arkansas.

### F. Motion To Extend Time For Service, Motion To Strike Reply, And Motion For Retroactive Leave To File Reply

On October 24, 2018, Cincinnati filed a motion to extend time for service, in which it sought an additional 90 days—until January 25, 2019—to serve 28 defendants who remained unserved (Dkt. No. 53). The Allen defendants responded in opposition, arguing that Cincinnati failed to demonstrate good cause for the requested extension (Dkt. No. 54). Cincinnati filed a reply in which it explained that it has been unable to serve all defendants because of "the volume of defendants and minority of many of these same defendants" and the fact that many of the defendants "have graduated from the Helena-West Helena School District, and no longer reside at their childhood homes, which makes their whereabouts even more difficult to ascertain." (Dkt. No. 55, at 2). Cincinnati attached to its reply correspondence with Ricky Earles, the process server who has attempted to serve defendants (Dkt. No. 55-1, at 1-5).

The Allen defendants then filed a motion to strike reply to defendants' response to motion to extend time for service, arguing that the Local Rules of the United States District Courts for the Eastern and Western Districts of Arkansas only permit replies as a matter of course during summary judgment proceedings (Dkt. No. 56). The Allen defendants therefore ask the Court to strike Cincinnati's reply (*Id*.). Cincinnati responded in opposition and contemporaneously filed a motion for retroactive leave to file reply (Dkt. No. 60). Cincinnati argues that its reply was necessary to rebut the arguments made by the Allen defendants in their response (*Id*.). The Allen defendants filed a response in opposition to Cincinnati's motion for retroactive leave to file reply (Dkt. No. 65-1).

Finally, on January 24, 2019, Cincinnati again filed a motion to extend time for service of complaint (Dkt. No. 75). Cincinnati seeks an extension of time for service until March 11, 2019 (*Id.*, at 4). Cincinnati represents that two corporate defendants remain to be served: Align M.D. PLLC ("Align") and Mid-Delta Radiology Associates ("Mid-Delta") (*Id.*, ¶ 4). According to Cincinnati, Align provided medical services to those injured in the accident and has outstanding medical bills or liens, but Cincinnati has been unable to locate Align, including *via* a search of the Arkansas Secretary of State's website (*Id.*, ¶ 6). Similarly, Cincinnati represents that Mid-Delta provided medical services to those injured in the accident, but each of Cincinnati's attempts to serve Mid-Delta have been ineffective (*Id.*, ¶ 9). Cincinnati further represents that it has discovered an additional business address for Mid-Delta, which may aid in its attempt to affect service (*Id.*). Finally, Cincinnati seeks an extension to obtain service upon Lovers Harris, Janice Williams, and Ron William, each of whom were not named in Cincinnati's prior warning order (*Id.*, ¶ 10).

The Court grants Cincinnati's motion for retroactive leave to file reply (Dkt. No. 60). The Court considers the reply and its attachments for the purposes of this analysis (Dkt. Nos. 55, 55-1). The Court denies the Allen defendants' motion to strike reply to defendants' response to motion to extend time for service (Dkt. No. 56).[1]

For good cause shown, the Court grants Cincinnati's motion to extend time for service and its motion to extend time to serve (Dkt. Nos. 56, 75). Rule 4(m) of the Federal Rules of Civil Procedure states:

> If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order

---

[1] The Court notes that, as a procedural matter, a motion to strike cannot be used to attack a reply to a motion. Fed. R. Civ. P. 12(f) ("The court may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.") (emphasis added).

that service be made within a specified time. But if the plaintiff shows good cause
for the failure, the court must extend the time for service for an appropriate period.

Accordingly, if the Court finds good cause for the delay, the Court must extend time for service, thus ending the inquiry. *Adams v. Allied Signal Gen. Aviation Avionics*, 74 F.3d 882, 887 (8th Cir. 1996). "If plaintiff fails to show good cause, the court still *may* extend the time for service rather than dismiss the case without prejudice." *Id.* (emphasis in original).

"[G]ood cause is likely (but not always) to be found when [1] the plaintiff's failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server, [2] the defendant has evaded service of the process or engaged in misleading conduct, [3] the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances, or [4] the plaintiff is proceeding *pro se* or *in forma pauperis*." *Kurka v. Iowa Cnty.*, 628 F.3d 953, 957 (8th Cir. 2010) (quoting 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1137, at 342 (3d ed. 2002)). Good cause requires at least "excusable neglect"—good faith and some reasonable basis for noncompliance with the rules. *Adams*, 74 F.3d at 887.

However, even without good cause shown, the Court still may extend the time for service rather than dismiss the case without prejudice if the plaintiff demonstrates excusable neglect. *Colasante v. Wells Fargo Corp.*, 81 Fed. App'x 611, 613 (8th Cir. 2003). This authorizes the Court "to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown." *Adams*, 74 F.3d at 887 (quoting Rule 4 Advisory Committee Notes (1993)).

The Court concludes, for the following reasons, that Cincinnati has shown good cause. As of October 24, 2018, Cincinnati had obtained service upon all but 28 of the defendants out of approximately 200 named defendants (Dkt. No. 53, ¶ 3). Then, over the next 90 days, Cincinnati

was able to obtain service on 183 defendants out of the 188 issued summons (Dkt. No. 75). Given the number of defendants, and Cincinnati's diligent attempts to serve those defendants, the Court concludes that there is good cause to grant Cincinnati's requested extensions to serve defendants. Even if this Court is incorrect in its determination regarding good cause and even in the absence of good cause, the Court has examined the factors that impact a determination of excusable neglect and would exercise its discretion by granting Cincinnati's motions for extension of time to serve on that basis.

Accordingly, the Court grants Cincinnati's motion to extend time for service and its motion to extend time to serve (Dkt. Nos. 56, 75). Per this Order, Cincinnati had until March 11, 2019, to obtain service on defendants. The Court recognizes that the March 2019 date has passed. The Court has received no update from Cincinnati regarding its attempts at service since the filing of its second motion to extend time to serve. If Cincinnati requests additional time for service, Cincinnati may file another motion for extension of time with the Court for consideration.

**IV. Conclusion**

It is therefore ordered that:

1. The Court denies as moot Cincinnati's first motion to deposit interpleader funds (Dkt. No. 6).

2. The Court grants Cincinnati's second motion to deposit interpleader funds (Dkt. No. 12). Accordingly, the Court orders Cincinnati to deposit the funds as follows:

> A. The Court hereby directs Cincinnati to issue and deliver a check payable to the Clerk of the United States District Court for the Eastern District of Arkansas in the amount of One Hundred Thousand Dollars ($100,000.00), plus any and all applicable interest earned on the funds at issue since Cincinnati filed its latest motion to deposit funds.

18

B. The Court hereby directs the Clerk of the Court to accept such funds and hold the same on deposit in the registry of the Court in an interest-bearing account or invest in an interest-bearing instrument, there to abide the judgment of the Court and for future disbursement to the person or persons adjudged by the Court to be entitled thereto.

C. It shall be the responsibility of Cincinnati's counsel to cause a copy of this Order to be personally served upon the Clerk of the Court or the Financial Deputy.

D. At this time, while the Court allows Cincinnati to deposit $100,000.00 into the registry of the Court based on Rule 22 interpleader, the Court expresses no opinion regarding the extent of Cincinnati's liability to defendants and declines to dismiss Cincinnati from the action at this time.

3. To the extent the separate defendants' answers contain motions to dismiss, the Court denies those motions (Dkt. Nos. 22, 25, 29, 49).

4. To the extent the separate defendants' answers contain motions to change venue, the Court grants those motions (Dkt. Nos. 22, 25, 29, 49). The Clerk of the Court is directed to transfer immediately this entire case to the Eastern Division of the Eastern District of Arkansas.

5. Cincinnati's motion for default judgment remains under advisement (Dkt. No. 47). The Court hereby refers the motion to the Clerk of Court for consideration to determine whether entry of a default is appropriate.

6. Cincinnati's motions to extend time for service and motion for retroactive leave to file reply are granted (Dkt. Nos. 53, 60, 75).

7. The Allen defendants' motion to strike reply is denied (Dkt. No. 56).

It is so ordered, this the 6th day of September 2019.

_Kristine G. Baker_
Kristine G. Baker
United States District Judge