IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

CINCINNATI INSURANCE COMPANY,
INC.                                                                                                         PLAINTIFF

v.                               Case No. 2:19-cv-00115 KGB

ANDREA DIEVERNICH, *et al.*                                                                DEFENDANTS

**OPINION AND ORDER**

Plaintiff Cincinnati Insurance Company, Inc. ("Cincinnati"), initiated this interpleader action pursuant to Federal Rule of Civil Procedure 22 on July 27, 2018, and filed its second amended complaint on October 19, 2020 (Dkt. Nos. 1, 140). At issue in this case is the total amount of liability coverage under an insurance policy between Cincinnati and the Helena-West Helena School District ("District") for a collision involving three District school buses and a Jeep Liberty (Dkt. No. 140, ¶¶ 118–121). Cincinnati seeks a declaratory judgment that the available coverage amount under the policy is $100,000 (*Id.*, ¶ 135).

Before the Court are Cincinnati's motion for declaratory judgment and motion for summary judgment (Dkt. Nos. 142, 144). Allen Defendants[1] responded in opposition to both

---

[1] Allen Defendants are separate defendants Dr. Mark Allen, Sr., Montreal Allen, Kylaun Anderson, Sandre Anderson, Marvie Askew-Evans, Andrew Bagley, Collin Bagley, Donna Block, Richard Brown, Keyon Burrell, Ma'Kaylah Carruth, Shazmyne Jamekia Carruth, Bakarius Collier, Murry Conail, Cypert Ridge Family Practice Clinic, Deketric Davis, Shamar Debnam, Cheryl Dixon, Jameshia Edmond, Chiniya Ellis, Maxine Ellison, Tasheta Evans, Carl Ford, Jr., Cynthia Ford, Magnola Ford, Nakiya Ford, Kylar Gamble, Jaylon Gates, Torri Gates, Adam Goodall, Ashaunte Goodall, Nyrita Gray, Lakesha Hamilton, Chester Harrell, Katrina Harrell, Sharonda Hart, Ahmaud Jones, Kayla Jones, Tangela King, Taylin King, Brandon McBride, Debbie Oliver, Demontae Oliver, John Oliver, Philemon Oliver, Tracey Partee, Bobbie Randle, Justin Redmon, Gian Roberts, Trina Roberts, Angel Sanders, Latesha Sanders, Shequina Shields, Earnest Simpson, Keisha Simpson, Kobe Simpson, Amanda Smith, Javazze Smith, Kyron Smith, Shereka Spearman, Gloria Spencer, Kylan Terry, Jordan Walker, Jimmy White, Phyllis White, Heaven Williams,

motions (Dkt. Nos. 153, 156). Separate defendant Helena Regional Medical Center ("HRMC") moved to adopt and join Allen Defendants' responses to the motions (Dkt. Nos. 164, 165), and the Court granted HRMC's motions to adopt and join Allen Defendants' responses to the motions (Dkt. No. 184, at 2-3). Cincinnati filed a reply in support of its renewed motion for declaratory judgment and in support of its renewed motion for summary judgment (Dkt. No. 160, 186). For the following reasons, the Court grants Cincinnati's motion for declaratory judgment and motion for summary judgment (Dkt. Nos. 142, 144).

I. **Statement Of Facts**

Unless otherwise stated, the following facts are drawn from Cincinnati's statement of facts and Allen Defendants' response to Cincinnati's statement of facts (Dkt. Nos. 146, 152).

On November 10, 2017, three school buses and one Jeep Liberty collided (Dkt. No. 146, ¶ 1). Cincinnati characterizes the collision as an accident (*Id.*), but Allen Defendants disagree with the characterization that the underlying events were a single accident (Dkt. No. 152, at 1–2). The Arkansas State police completed a motor vehicle crash report (Dkt. No. 146, ¶ 2).

At the time of the motor vehicle collision, there was a commercial automobile policy in effect for the District (*Id.*, ¶ 3). The policy states on the page entitled "Business Auto Coverage Part Declarations" that "the most we will pay for any one accident or loss" is "$100,000" (*Id.*, ¶ 4; Dkt. No. 99-2, at 66). According to the policy, "'[a]ccident' includes continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage'." (Dkt. No. 146, ¶ 5; Dkt. No. 99-2, at 34). The policy further states, "[r]egardless of the number of covered 'autos', 'insureds', premiums paid, claims made or vehicles involved in the 'accident', the most we will

---

Syieed Wilson, Breuna Womack, Earnest Womack, Michelle Wright, D'andreya Devay Young, and D'andreya Young (Dkt. No. 153).

pay for the total of all damages and 'covered pollution cost or expense' combined, resulting from any one 'accident' is the Limit of Insurance for Liability Coverage shown in the Declarations." (Dkt. No. 146, ¶ 6; Dkt. No. 99-2, at 29).

Cincinnati asserts that the policy language establishes unambiguously that the number of school buses involved in the accident is irrelevant for purposes of determining the amount of liability coverage (Dkt. No. 146, ¶ 7). Allen Defendants deny this and assert that the entire premise of Cincinnati's statement is based on Cincinnati's allegation that the underlying events are to be considered a single accident, which Allen Defendants dispute and deny (Dkt. No. 152, at 5).

Additionally, Allen Defendants submit that the policy states that "[o]ther words and phrases that appear in quotation marks have special meaning. Refer to SECTION V - DEFINITIONS." (*Id.*; Dkt. No. 99-2, at 24). Allen Defendants further submit that, on the page entitled "Business Auto Coverage Part Declarations," the language stating "the most we will pay for any one accident or loss" does not use quotation marks around the word "accident" (Dkt. No. 152, at 6; Dkt. No. 99-2, at 66). Allen Defendants assert that, on this same page, terms that are defined in the policy appear using quotation marks around such terms (Dkt. No. 152, at 6; Dkt. No. 99-2, at 66). Cincinnati denies each of these statements to the extent that a response may be required (Dkt. No. 160, at 6 n.3).

Cincinnati interpleaded $100,000 into the registry of the Court on October 29, 2019 (Dkt. No. 146, ¶ 8).

## II. Procedural Background

This Court previously recounted the procedural history of this action in an Order dated September 6, 2019 (Dkt. No. 88). After entry of that Order, Cincinnati filed motions for leave to file its second amended complaint, for default judgment against certain defendants, for declaratory

judgment, and for summary judgment (Dkt. Nos. 90, 92, 99, 107).  On February 19, 2020, attorney David Hodges entered an appearance on behalf of several defendants and represented that he had reached an agreement with most of the defendants in this matter to take the lead in representation of Allen Defendants (Dkt. No. 110, ¶¶ 2–3).  Allen Defendants responded in opposition to Cincinnati's motions for default judgment, declaratory judgment, and summary judgment (Dkt. Nos. 103, 111, 115).  The Court granted Cincinnati's motion for leave to file an amended complaint, denied without prejudice Cincinnati's motion for default judgment, and denied as moot Cincinnati's motions for declaratory judgment and for summary judgment (Dkt. Nos. 139, 157, 159).  Cincinnati subsequently filed its second amended complaint and the instant motions for declaratory judgment and for summary judgment, arguing that the total amount owed under the insurance policy is $100,000 (Dkt. Nos. 140, 142, 144).  Allen Defendants filed an answer and counterclaim, claiming that Cincinnati's total liability is $300,000 (Dkt. No. 147, ¶ 22).  Allen Defendants responded in opposition to Cincinnati's motions, and HRMC joined and adopted Allen Defendants' responses (Dkt. Nos. 153, 156, 164, 165).  HRMC also filed a counterclaim and cross-complaint against Avin Redmon, Devita Redmon, Justin Rogers, DeWayne Stackhouse, Jimmy White, Phillis White, and Cincinnati (Dkt. No. 187).  Finally, the Court adopted joint stipulations between Cincinnati and separate defendant the University of Arkansas for Medical Sciences ("UAMS") and between Cincinnati and separate defendant Radiology Associates, PA, and dismissed as parties UAMS and Radiology Associates, PA (Dkt. Nos. 166, 172).

### III. Standard of Review

#### A. Declaratory Judgment

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction," subject to some exceptions not at issue here, "any court of the United States, upon

the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

"There is no clear-cut standard to use in determining whether a court should exercise its discretion to grant declaratory relief." *Bd. of Regents for Nw. Mo. St. Univ. v. MSE Corp.*, Case No. 90-0125-cv-W-9, 1990 WL 212098, at *2 (W.D. Mo. Nov. 20, 1990). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). In general, courts should exercise their discretion in such a way as "to strike a proper balance between the needs of the plaintiff and the consequences of giving the desired relief. . . . The actuality of the plaintiff's need for a declaration of his rights is therefore of decisive importance." *Eccles v. People's Bank of Lakewood Village, Cal.*, 333 U.S. 426, 431–32 (1948).

        **B.**     **Summary Judgment**

Pursuant to the Federal Rules of Civil Procedure, the Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable jury could render its verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). Mere denials or allegations are insufficient to defeat an otherwise properly supported motion for summary judgment. *See Com. Union Ins. Co. v.*

*Schmidt*, 967 F.2d 270, 271–72 (8th Cir. 1992); *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).

The initial burden is on the party seeking summary judgment to demonstrate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019). If the moving party satisfies its burden, the burden then shifts to the non-moving party to establish the presence of a genuine issue that must be determined at trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). The non-movant "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*) (quoting *Matsushita*, 475 U.S. at 586, 587). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

IV. **Discussion**

The Court will first address Cincinnati's motion for summary judgment because resolution of the motion is entirely dispositive of the parties' arguments and Cincinnati's claims. The Court will then address Cincinnati's motion for declaratory judgment.

A. **Motion For Summary Judgment**

Under Arkansas law, if the language in an insurance policy is ambiguous, then the Court must construe the language strictly against the insurance company and resolve all doubts in favor of the insured. *Southern Title Ins. v. Oller*, 595 S.W.2d 681, 683 (Ark. 1980). An insurance policy is ambiguous if "there is doubt and uncertainty as to its meaning and it is fairly susceptible of two or more interpretations." *Nationwide Mut. Ins. Co. v. Worthey*, 861 S.W.2d 307, 310 (Ark. 1993).

6

"Although the meaning of an ambiguity may become a question for the fact-finder if parol evidence has been admitted to resolve that ambiguity, . . . where the meaning of the language of a written contract does not depend on disputed extrinsic evidence, the construction and legal effect of the contract are questions of law." *Smith v. Prudential Prop. & Cas. Ins. Co.*, 10 S.W.3d 846, 850 (Ark. 2000).

Further, if the language of a policy is unambiguous, then the Court need not resort to rules of construction in order to ascertain the meaning of the insurance policy. The Court must apply the plain and ordinary meaning of terms in the policy. *S. Farm Bureau Cas. Ins. Co. v. Williams*, 543 S.W.2d 467, 469 (Ark. 1976). "[W]hen policy language is clear and unambiguous, the court should decide, as a matter of law, the construction." *Nat. Life & Accident Ins. Co. v. Abbott*, 455 S.W.2d 120 (Ark. 1970).

The parties dispute whether the insurance policy is ambiguous. Cincinnati argues that the policy is unambiguous as to the meaning of the word "accident" and that a single accident occurred in this case (Dkt. No. 145, at 3). Cincinnati argues that, if the four-vehicle collision was a single accident, then the maximum Cincinnati owes under the insurance policy is $100,000 (*Id.*).

Allen Defendants argue that the insurance policy is ambiguous and that the policy can be interpreted to require Cincinnati to pay at least $300,000 (Dkt. No. 155, at 3–4). According to Allen Defendants, the policy is ambiguous because the word "accident" as it appears on the Business Auto Coverage Part Declarations page does not appear with quotation marks, which, Allen Defendants argue, means that it is not a defined term in the policy and that accident is therefore ambiguous (*Id.*, at 4). Allen Defendants therefore assert that the collisions involving three separate buses can reasonably be interpreted as three separate accidents under the policy (*Id.*). Allen Defendants further argue that each bus driver had an independent duty under Arkansas

7

law to drive safely and avoid collisions and that, "if the various individual drivers breached their duties, those are separate causes as to demonstrate that Plaintiff can be liable for at least $300,000 under the policy." (*Id.*, at 9–10).

Here, the insurance policy provides that "the most we will pay for any one accident or loss" is "$100,000" for liability coverage (Dkt. No. 146, ¶ 4; Dkt. No. 99-2, at 66). According to the policy, "'[a]ccident' includes continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage'." (Dkt. No. 146, ¶ 5; Dkt. No. 99-2, at 34). The policy further states, "[r]egardless of the number of covered 'autos', 'insureds', premiums paid, claims made or vehicles involved in the 'accident', the most we will pay for the total of all damages and 'covered pollution cost or expense' combined, resulting from any one 'accident' is the Limit of Insurance for Liability Coverage shown in the Declarations." (Dkt. No. 146, ¶ 6; Dkt. No. 99-2, at 29).

The policy does not provide an exclusive definition of the word "accident." Instead, the policy provides that the word "*includes* continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage'." (Dkt. No. 99-2, at 34 (emphasis added)). *See Grange Mut. Cas. Co. v. Slaughter*, 958 F.3d 1050, 1061 (11th Cir. 2020) (construing an identical definition of "accident," concluding that the word was "not fully defined" under the insurance policy, and turning to state law to fill gaps); *Frederking v. Cincinnati Ins. Co.*, 929 F.3d 195, 197, 197 n.1 (5th Cir. 2019) (construing virtually identical language, concluding that "accident" was undefined, and giving "accident" its plain and ordinary meaning under state law). The Arkansas Supreme Court has defined "accident" to mean "an event that takes place without one's foresight or expectation—an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected." *Continental Ins. Co. v. Hodges*, 534 S.W.2d 764, 765 (Ark. 1976) (citations and quotations omitted). Thus, as used in the policy, "accident" means an event

that takes place without one's foresight or expectation, including continuous or repeated exposure to the same conditions resulting in bodily injury or property damage.

The policy further contemplates that a single accident may include multiple vehicles. The policy states, in relevant part, "[r]egardless of the number of . . . vehicles involved in the 'accident', the most we will pay for the total of all damages . . . resulting from any one 'accident' is the Limit of Insurance for Liability Coverage shown in the Declarations." (Dkt. No. 146, ¶ 6; Dkt. No. 99-2, at 29). The policy therefore makes clear that a single accident may include any number of vehicles as long as the event takes place unexpectedly and involves continuous or repeated exposure to the same conditions. Courts interpreting virtually identical language have reached the same conclusion. *Munroe v. Continental W. Ins. Co.*, 735 F.3d 783, 790 (8th Cir. 2013) (concluding that policy providing for coverage limit "[r]egardless of the number of covered 'autos,' 'insureds,' premiums paid, claims made or vehicles" unambiguously limited recovery "regardless of the number of vehicles or people involved in the accident"); s*ee also State Auto Ins. Co. v. Stinson*, 142 F.3d 436 (Table), at *4 (6th Cir. 1998) (concluding that a policy with virtually identical language was unambiguous and that it was the clear intent of the policy to pay no more than $100,000 for any one occurrence, regardless of the number of vehicles involved in the accident).

The plain and ordinary use of the word "accident" in the context of automobile collisions also supports the conclusion that the word can describe multiple-vehicle collisions. *See, e.g.*, *Woodward v. Blythe*, 462 S.W.2d 205, 206 (Ark. 1971) (referring to "multiple car collision" involving three vehicles as "the accident"); *Thomas v. Robinson*, 596 S.W.3d 531, 532 (Ark. Ct. App. 2020) (describing multiple car collision as "a car accident" where defendant rear-ended third party who then rear-ended plaintiff).

On the record before the Court, the Court concludes that there is no genuine issue of material fact as to the contents of the insurance policy and that the policy unambiguously limits the liability coverage for any one accident to $100,000. The Court further concludes that the four-vehicle collision at issue here was a single accident under the insurance policy. The vehicles collided with each other in the same place at the same time. The same condition—backed-up rush-hour traffic—caused each vehicle to brake unexpectedly and resulted in bodily injury and property damage (Dkt. No. 99-1, at 1, 22, 26–30). Accordingly, the Court concludes that the insurance policy requires $100,000 in liability coverage for this accident.

The Court is not persuaded by Allen Defendants' arguments that the insurance policy is ambiguous and that multiple accidents occurred. Allen Defendants contend that the word "accident" as used on the Business Auto Coverage Part Declarations page is ambiguous. According to Allen Defendants, the policy clarifies that "[o]ther words and phrases that appear in quotation marks have special meaning." (Dkt. No. 155, at 3 (quoting Dkt. No. 107-2, at 24)). Allen Defendants point out that words accompanied with quotation marks appear hundreds of times throughout the policy documents (Dkt. No. 155, at 4). Allen Defendants further note that the Business Auto Coverage Part Declarations page, which provides that the liability coverage limit is $100,000, does not include quotation marks around the word accident, reading instead, "THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS" (*Id.* (quoting Dkt. No. 107-2, at 66 (capitalization in original))). Allen Defendants therefore argue that the absence of quotation marks around the word "accident" on the Business Auto Coverage Part Declarations page "demonstrates that the defined term is not applicable" and that "there are ambiguities in this regard, and construing the Policy strictly against the insurer, the policy can reasonabl[y] be read as to

consider the collisions involving three separate buses . . . as three separate accidents." (Dkt. No. 155, at 4).

However, other provisions of the insurance policy clarify that the limit of insurance for any one accident is $100,000. The policy states:

> Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.
>
> All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

(Dkt. No. 99-2, at 29). The limit of insurance for liability coverage shown in the Business Auto Coverage Part Declarations is $100,000 (*Id.*, at 66). Thus, even if the word "accident" were ambiguous as it appears on the Business Auto Coverage Part Declarations page, the policy overall unambiguously provides that Cincinnati's limit of liability coverage for any one "accident" is $100,000.

Further, the lack of a definition does not always render a word or policy ambiguous, even if the absence of quotation marks around the word "accident" were to mean that the word as used on the Business Auto Coverage Part Declarations page is not a defined term. Undefined terms are not necessarily ambiguous. *Smith v. S. Farm Bureau Cas. Ins. Co.*, 114 S.W.3d 205, 207 (Ark. 2003). As explained above, the Arkansas Supreme Court has supplied a definition of the word "accident" in the context of insurance policies. Allen Defendants do not offer any alternative interpretation of the word "accident" which would create "doubt and uncertainty as to its meaning and [make the word] fairly susceptible of two or more interpretations." *Worthey*, 861 S.W.2d at 310. Thus, even if the Court were to assume that the word "accident" is an undefined term as it

11

appears on the Business Auto Coverage Part Declarations page, the policy would not be ambiguous because "accident" would retain its meaning as the Arkansas Supreme Court has defined it.

Allen Defendants further argue that each of the three bus drivers individually failed to meet the requisite standard of care while driving and that these failures constitute separate and independent causes of the collisions (Dkt. No. 155, at 5–10). Allen Defendants cite in support *Traveler's Indemnity Co. v. Olive's Sporting Goods, Inc.*, 764 S.W.2d 596 (Ark. 1989), in which the Arkansas Supreme Court adopted the "cause theory" instead of the "effect theory" for determining the number of occurrences under an insurance policy. 764 S.W.2d at 599. Under the cause theory, courts must examine the cause of an occurrence, rather than its effects, to determine the number of accidents or occurrences under a policy. *See Fireman's Fund Ins. Co. v. Scottsdale Ins. Co.*, 968 F. Supp. 444, 447 (E.D. Ark. 1997) ("[T]his Court is bound to examine the 'cause' of the incident(s) to determine how many occurrences there were."). Allen Defendants argue that there were multiple causes of the collisions because each of the drivers had a duty under Arkansas law to drive in a safe manner and to avoid collisions (Dkt. No. 155, at 8).

Allen Defendants' cause theory argument is unpersuasive and, if anything, supports this Court's conclusion. In *Olive Sporting Goods*, the insured sold two weapons to a gunman, and the gunman shot multiple people. 764 S.W.2d at 597. The insurance policy at issue defined an occurrence as "an accident including continuance [of] or repeated exposure to conditions which result in bodily injury neither expected nor intended from the standpoint of the insured." *Id.* at 599 (alteration in original). The court examined the cause, rather than the effects, of the shooting and concluded that the sale of weapons constituted a single occurrence under the terms of the policy. *Id.*

Relatedly, in *Fireman's Fund Insurance Co. v. Scottsdale Insurance Co.*, the parties disputed "which of two types of causes should be considered for the purposes of deciding what the occurrence was[,] . . . whether the cause/occurrence was the allegedly negligent preparation/handling/storage of the food or instead was its sale." 968 F. Supp. 444, 447–48 (E.D. Ark. 1997).  The Court concluded that "Arkansas' Supreme Court would hold that in a case like the one at bar, multiple sales of contaminated food at a restaurant to several customers would nevertheless be one occurrence within the meaning of a standard [comprehensive general liability] insurance contract."  968 F. Supp. at 448.  The Court further suggested that "if the factual evidence were to reveal that two or more wholly independent events occurred, each resulting in injury (such as food being contaminated by someone in August and someone else contaminating food in October), then more than one occurrence might be found."  *Id.*

Similarly, the factual evidence here does not reveal that two or more wholly independent accidents occurred.  Instead, the record indicates that each collision was the direct result of the same condition, namely rush-hour traffic (Dkt. No. 99-1, at 1, 22, 26–30).  Allen Defendants argue that each driver had a duty to drive safely under Arkansas law, but Allen Defendants do not offer any record evidence that any driver was driving unreasonably or unsafely or otherwise violating their duties of care.  Instead, Allen Defendants suggest that "a failure of each of the drivers to meet their duties could have each caused the various collisions" and that "if various individual drivers breached those duties, those are separate causes as to demonstrate that Plaintiff can be liable for at least $300,000 under the policy" (Dkt. No. 155, at 9–10 (emphasis omitted)).  Allen Defendants neither identify nor offer evidence of any other wholly independent events which may have caused the collisions between the four vehicles, and this Court does not find any such evidence in the record.

Finally, the Court rejects Allen Defendants' argument that apparent inconsistencies in driver and witness statements in the record create factual issues which preclude summary judgment (Dkt. No. 155, at 8). Allen Defendants assert that "the driver and witness statements attached to the Accident Report recite varying accounts of how the events unfolded" and that "[t]here are clear factual issues as to how the events unfolded" (*Id.*). The Court recognizes that it is unclear based on the factual record whether the first school bus struck the Jeep Liberty or whether the second school bus rear-ended the first school bus and caused the first school bus to strike the Jeep Liberty (Dkt. No. 99-1, at 1, 22–30). However, even if these statements in the record were inconsistent, these inconsistencies do not create an issue of material fact because nothing in the record before the Court indicates that there was any condition other than rush-hour traffic that caused the accident at issue. Allen Defendants do not provide any further evidence tending to support the argument that different conditions arose which caused at least three distinct accidents.

Accordingly, the Court concludes that the insurance policy unambiguously limits the liability coverage for any one accident to $100,000. The Court further concludes that the four-vehicle collision at issue here was a single accident under the insurance policy.

### B. Motion For Declaratory Judgment

Cincinnati makes substantially similar arguments in its motion for declaratory judgment as it does in its motion for summary judgment (Dkt. Nos. 142, 143). Likewise, Allen Defendants make substantially similar arguments in their response to Cincinnati's motion for declaratory judgment as they do in their response to Cincinnati's motion for summary judgment (Dkt. Nos. 153, 154). Accordingly, for the same reasons discussed above, the Court grants Cincinnati's motion for declaratory judgment.

V.	**Conclusion**

For the foregoing reasons, the Court grants Cincinnati's motions for declaratory judgment and for summary judgment (Dkt. Nos. 142, 144).  The Court dismisses Cincinnati as a party in this case.

It is so ordered this 30th day of September, 2021.

*Kristine G. Baker*
Kristine G. Baker
United States District Judge